UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
J & J Sports Productions, Inc.,

                          Plaintiff,

           - against -

Francisco Mendez, individually and d/b/a
Mendez Boxing; and Mendez Boxing Fifth Ave., Inc.,
an unknown business entity d/b/a Mendez Boxing

                        Defendant(s).
-------------------------------------------------------------------X

PLAINTIFF'S MEMORANDUM IN
SUPPORT OF APPLICATION FOR
DEFAULT JUDGMENT

Case No.: 1:19-cv-03907-JPO

**COMES NOW** the Plaintiff, J & J Sports Productions, Inc., by and through its attorneys of record, and hereby submits this Memorandum of Points and Authorities in Support of its Application for Default Judgment by the Court and against Defendant(s) Francisco Mendez, individually and d/b/a Mendez Boxing and Mendez Boxing Fifth Ave., Inc., an unknown business entity d/b/a Mendez Boxing (hereinafter "Defendant(s)"). For the reasons set forth herein, as well as the supporting documentation submitted herewith, plaintiff respectfully requests that its Application for Default Judgment by the Court be granted.

## INTRODUCTION AND STATEMENT OF FACTS

Plaintiff J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor of sports and entertainment programming. By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast the *Saul Alvarez v Amir Khan WBC Championship Fight Program*, telecast nationwide on Saturday, May 7, 2016 (hereinafter the "Program"). Complaint ¶16 (Dkt. No. 1); Gagliardi Affidavit ¶ 3. This Program included the main event (between Saul Alvarez v Amir Khan) along with under-card bouts, televised replay, and color commentary, hereinafter collectively referred to as the "Program." Id.; Gagliardi Affidavit ¶ 7.  Pursuant to the contract granting Plaintiff

its distribution rights, Plaintiff entered into sub-licensing agreements with commercial establishments to permit public exhibition of the Program. Id. ¶ 14; Gagliardi Affidavit ¶ 3. The interstate transmission of the Plaintiff's Program was encrypted and made available only to Plaintiff's customers (commercial locations that paid Plaintiff the requisite closed-circuit (commercial) license fees to exhibit the Program). Gagliardi Affidavit ¶8.

Without the authorization of Plaintiff, Defendant(s) unlawfully intercepted, received and exhibited the Program at his commercial establishment, Mendez Boxing, a commercial establishment operated by Defendant(s), located at 23 E 26th Street, New York NY 10010. Complaint ¶16; Affidavit of Jesse Divers (submitted herewith as Exhibit 5 to the Declaration of Joseph P. Loughlin). Specifically, on May 7, 2016, Jesse Divers observed the main event between Saul Alvarez v Amir Khan being broadcast at Mendez Boxing. Jesse Divers Affidavit at 1. At no time did Defendant(s) ever lawfully license the Program from Plaintiff for such a purpose. Gagliardi Affidavit ¶7.

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed its Complaint against Defendant(s) on May 1, 2019. (Dkt. No. 1). Defendant(s) was served on May 21, 2019 & May 14, 2019. Proof of Service (Dkt. No. 8 & 7); Joseph P. Loughlin Declaration ¶ 15 (attaching Return of Service and specifying method of service). On July 8, 2019, after the time for Defendant(s) to appear or otherwise defend had expired, Plaintiff requested a Certificate of Default from the Clerk. (Dkt. Nos. 13 & 14). On July 8, 2019, default was entered against Defendant(s). (Dkt. Nos. 16 & 17). Plaintiff now seeks default judgment against Defendant(s).

## **ARGUMENT**

I. PLAINTIFF IS ENTITLED TO DEFAULT JUDGMENT IN THIS MATTER AS THE PROCEDURAL REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 55(b) AND THE SECOND CIRCUIT ARE SATISFIED.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), after the entry of default, a Plaintiff may apply to the Court for a default judgment. Fed.R.Civ.P. 55(b)(2). As noted above, default was entered against the Defendant(s) on July 8, 2019. In addition, as detailed in Plaintiff's Application for Default Judgment, filed concurrently herewith, the procedural requirements of Federal Rule 55(b)(2) have been satisfied in this case.

After the entry of default, the Court retains discretion whether to grant a final default judgment. *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999). If a district court determines that a defendant is in default, all reasonable inferences should be drawn in favor of the prevailing party. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Accordingly, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Greyhound Exhibit Grp. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992). Before entering default judgment, the Court must determine whether Plaintiff's allegations establish Defendants' liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

To prevail under 47 U.S.C. § 605 or 47 U.S.C. § 553, Plaintiff must demonstrate that it has a proprietary interest in the Program and that Defendant unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program at Mendez Boxing without the authorization of Plaintiff. See 47 U.S.C. § 605(a); 47 U.S.C. § 553(a). Plaintiff's Complaint properly alleges the elements of the above causes of action and, therefore, the Complaint states its causes of action. See Complaint ¶¶ 15-24, 25-29.

Pursuant to the Second Circuit's opinion in *International Cablevision, Inc. v. Sykes*, 75 F.3d

123, 133 (2d Cir. 1996) ("Sykes II"), 47 U.S.C. § 605 covers satellite violations and certain cable violations. In circumstances where both statutes are violated, however, the Plaintiff may only recover under one statute and the Court should award damages under 47 U.S.C. § 605. *International Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008-09 (2d Cir. 1993) ("Sykes I"). In this case, based on the allegations of the Complaint, violations of both 47 U.S.C. § 605 and 47 U.S.C. § 553 are established and, therefore, the Court should award damages under 47 U.S.C. § 605. Such a finding is in keeping with the observation that obtaining direct evidence of signal interception is difficult. See *Directv, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("The law does not require direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its very nature a surreptitious venture and direct evidence may understandably be hard to come by.").

In light of the foregoing, this Court may properly enter default judgment against Defendant.

## II. PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES AS PERMITTED UNDER THE UNITED STATES CODE.

As noted above, upon entry of default, the Court accepts all well-pleaded factual allegations of Plaintiff's Complaint as true, save for those relating to damages. *Greyhound Exhibit Grp.*, 973 F.2d at 158. Plaintiff presents its damages arguments below.[1]

A party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Plaintiff elects to recover statutory damages. Plaintiff requests

---

[1] Under Federal Rule of Civil Procedure 55(b)(2), the Court may conduct a hearing into the amount of damages, however, this is not mandatory. *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir.1989 ("it was] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."). This is particularly true when damages may be ascertained from the documentary evidence and when a party seeks statutory damages (as Plaintiff does herein). See *North American Van Lines, Inc. v. Wenzel*, 2012 WL 1110093, *2 (N.D.Ind. Apr. 2, 2012). Plaintiff requests that the Court determine damages based on the documentary evidence.

statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). The amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be not less than $1,000.00 nor more than $10,000.00. *Id*. Next, Plaintiff requests enhanced damages pursuant to section 605(e)(3)(C)(ii). 47 U.S.C. § 605(e)(3)(C)(ii) permits this Court, in its discretion, to award up to $100,000.00 in additional damages where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff requests $6,600.00 in statutory damages and $19,800.00 in enhanced statutory damages, a three times multiplier of the statutory damages award.[2] These awards are appropriate to satisfy the dual purposes of compensating Plaintiff and acting as a deterrent against future acts of piracy by both this Defendant and others.

A.   Congress Considers Piracy To Be Theft And Significant Damages Are Necessary To Curb The Pervasive Practice Of Piracy.

When Congress enacted the Communications Act, it was keenly aware of the detrimental impact of piracy. In fact, Congress has equated a violation of the piracy statutes to theft. *Cable Communications Policy Act of 1984*, *House Report No. 98-934*, 5 U.S. Cong. News. '84 Bd. Vol.-6, 4655, 4720 (emphasis added). As stated in the House Bill:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the *theft cable service* . . .

> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

*Id.* (emphasis added). In assessing damages herein, Plaintiff requests that the Court take the purpose

---

[2] Plaintiff also requests pre- and post-judgment interest at the federal statutory rate.

of the legislation into account and recognize that an "award of modest damages does not satisfy the purpose of the legislation." *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 669, 676-77(D.S.C. 2011) (emphasis added).

      1. The Statutes Contemplate both Specific and General Deterrence.

The goal of deterrence may be considered in making a damages award. *Sykes II*, 75 F.3d at 132. In addition, the piracy statutes contemplate both specific and general deterrence. *Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, *4 (E.D.Cal. Jan. 10, 2011). In addition, when considering the impact that deterrence should have on an award, the Court should also be aware that detecting piracy is difficult. J *& J Sports Productions, Inc. v. Cubides*, 2008 WL 2756401, *2 (S.D.Tex. July 15, 2008).

      B.    Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II) And Enhanced Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(ii).

The Court has discretion in awarding statutory and enhanced statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) and (c)(ii). For statutory damages, courts in the Southern District have generally utilized either the licensing fee or a per-person multiplier based on the number of patrons. *See e.g. J & J Sports Productions, Inc. v. Sugar Café, Inc*. 2018 WL 324266, *1 (S.D.N.Y. Jan. 5, 2018) (discussing methods). The Court will award the higher of the two. *See Id.* Plaintiff requests that the Court not utilize either approach herein.

With respect to awarding statutory damages based on the licensing fee, such an award undervalues the *Program* and fails to compensate Plaintiff adequately. See *Kingvision Pay-PerView, Ltd. v. Jasper Grocery*, 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001) ("a damage award based exclusively on licensing fees would under compensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that [plaintiff] can

charge for sublicenses."). Moreover, a statutory award on presumed actual losses conflates two separate sections of 47 U.S.C. § 605(e)(3)(C). Statutory damages are awarded as an alternative to actual damages. See 47 U.S.C. § 605(e)(3)(C)(i). The purpose of awarding statutory damages is that actual damages are often difficult to prove. *See Lauretex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F.Supp. 730, 732 (S.D.N.Y. 1981). In F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228 (1952), the Supreme Court discussed the purposes of providing for statutory damages:

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

*Id.* at 233 (emphasis added).[3] Ultimately, an award of statutory damages based on a presumed actual loss negates the purpose of having two separate types of damages available.

The second formula involves multiplying the number of patrons by a residential fee. The flaws inherent in the methodology were addressed in *J & J Sports Productions, Inc. v. Sin Fronteras Restaurant*, 2010 WL 1565441 (E.D.N.Y. Feb. 23, 2010). *Sin Fronteras* observed that utilizing the residential rate would "understate the seriousness of defendants' conduct" and that "legitimate commercial establishments will be unwilling and unable to compete financially with establishments such as that of the defendants, which offer the stolen programming to their customers for no fee [and that] Defendants' acts [] have contributed to the erosion of plaintiff's sales and of its customer base." Id. at *8. Similar concerns have been raised herein. Gagliardi Affidavit ¶¶5, 12-13. Next, as this is

---

[3]This was a Copyright Act case. As with 47 U.S.C. § 605, a violation of the Copyright Act may result in either actual damages or statutory damages. See 17 U.S.C. § 504(a).

a default case, Plaintiff cannot calculate the profits of the Defendant. However, there is a reasonable

presumption that such profits occurred. As stated in *Joe Hand Promotions, Inc. v. Wing Spot Chicken*

*& Waffles, Inc.*, 920 F.Supp.2d 659 (E.D.Va. 2013):

> The defendant restaurant is a commercial establishment, and on the night of the
> Exhibition hosted approximately forty patrons, who were able to enjoy the Exhibition
> at no cost to the defendant restaurant. Each of the restaurant's six televisions showed
> the Exhibition. . . . Because the defendant showed the Exhibition on all of its
> televisions at no cost, the Court concludes that the defendant acted willfully for
> commercial advantage and private financial gain.

Id. at 668-69.

The *Program* herein was observed being broadcast at Mendez Boxing by investigator Jesse

Divers. Jesse Divers *Affidavit* at 1-2. Jesse Divers observed the Program on One (1) television(s) to

approximately 40 patrons. *Id.* at 1. The cost for the establishment to broadcast the Program lawfully

was $2,200.00. Gagliardi Affidavit ¶8. (Exhibit 2). With respect to statutory damages, Plaintiff

requests $6,600.00, which is three times the licensing fee. Such an award is more in keeping with

the purpose of the piracy statutes. See *J & J Sports Productions, Inc. v. Tonita Restaurant, LLC*,

2015 WL 9462975, *5, n.8 (E.D.Ky. Dec. 28, 2015) (awarding $6,600 in statutory damages, 3x the

licensing fee, and holding that "a treble award, as Plaintiff suggests, [is] appropriate here. Unlawful

access must cost a violator more than face ticket price"); *Joe Hand Promotions, Inc. v. Sheedy*, 2011

WL 4089534, *3 (D.S.C. July 29, 2011) (awarding five times the licensing fee as statutory damages).

If the Court were to adhere to the approaches previously used within the Second Circuit, the

statutory damages award would be the equivalent of the licensing fee ($2,200.00). As noted above,

however, such an award both fails to compensate Plaintiff adequately and conflates two separate

provisions of 47 U.S.C. § 605. In addition, such an award would create a perverse incentive for an

individual to attempt to break the law.

With respect to whether Defendant(s) acted willfully and for financial gain, this is established by several factors. First, courts in the Second Circuit have found that the act of intercepting and broadcasting an event without permission is itself willful conduct. See *J & J Sports Productions, Inc. v. Johnny's Restaurant*, 2016 WL 8254906, *5 (E.D.N.Y. Dec. 15, 2016)(discussing cases); *see also Time–Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y.1999) ("signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). Defendants' default and the testimony of Mr. Gagliardi also supports this conclusion. See J *& J Sports Productions, Inc. v. Acevedo*, 2010 WL 1980849, *2 (E.D.Ark. May 13, 2010) ("By their default, Defendants admit they willfully violated 47 U.S.C. §§ 553 and 605 as alleged in the complaint for commercial advantage."); see Gagliardi Affidavit ¶¶9, 14-17. As stated in *Wing Spot Chicken & Waffles, Inc., supra,*

> The act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition. Further, the Court finds that this willful act was done for either "direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The defendant restaurant is a commercial establishment, and on the night of the Exhibition hosted approximately forty patrons, who were able to enjoy the Exhibition at no cost to the defendant restaurant. Each of the restaurant's six televisions showed the Exhibition. . . . Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial advantage and private financial gain.

> 920 F.Supp.2d at 668-69.

In calculating damages herein, *J & J Sports Productions, Inc. v. McCausland*, 2012 WL 113786 (S.D.Ind. Jan. 13, 2012), is instructive. After evaluating the facts and the purposes of the piracy statutes, including the importance of deterrence, the district court awarded $10,000 in statutory damages and $30,000 in enhanced damages. *McCausland*, 2012 WL 113786 at *3-4. The underlying facts in *McCausland* are similar to those herein. *In McCausland*, there were between

10-17 patrons and the program was shown on one television. *McCausland*, 2012 WL 113786 at *1.

The commercial fee was the same, $2,200. Id. at *1, 4. Ultimately, in awarding $30,000 in enhanced

statutory damages the *McCausland* Court stated:

> Defendants' actions, although willful, had a relatively small impact: they occurred in a small geographic location; they occurred in a small establishment; there is no evidence that Defendant is a repeat offender; and there is no evidence that Defendants advertised or charged cover. That said, the Court also believes that the need to send a deterrent signal to Defendants and other would-be offenders is paramount. Moreover, the Court accords weight to the fact that Defendants have opted not to respond to Plaintiff's allegations in any fashion whatsoever. Not only does this failure to respond evince willfulness, it also precludes the Court from analyzing how a given damages award might impair the commercial viability of Defendants' business.

*McCausland*, 2012 WL 113786 at *4 (emphasis added).

In *J & J Sports Productions, Inc. v. Meson de Colombia, Inc.*, 2010 WL 4791771, *3

(E.D.N.Y. Oct. 7, 2010), the Court also recommended a 3x multiplier as enhanced statutory

damages. Plaintiff recognizes that the *Meson de Colombia* case involved a statutory award of $1,500,

which represented the licensing fee. *Meson de Colombia, Inc.*, 2010 WL 4791771 at *2. Nonetheless,

the Court's analysis did not appear to be specifically contingent on the underlying statutory award

such that the general approach of awarding a 3x multiplier is appropriate herein.

III. PLAINTIFF IS ENTITLED TO COSTS AND REASONABLE ATTORNEYS' FEES.

47 U.S.C. § 605 mandates an award of costs and attorneys' fees to an aggrieved party. 47

U.S.C. § 605(e)(3)(B)(iii) (the Court "*shall direct* the recovery of full costs, including awarding

reasonable attorneys' fees to an aggrieved party who prevails") (emphasis added). Plaintiff requests

that it be granted 30 days from the date the judgment becomes final to submit its Motion for costs

and attorneys' fees.

## CONCLUSION

Based on the foregoing, default judgment against Defendant(s) and in favor of Plaintiff is proper and should be entered with respect to Plaintiff's claim under 47 U.S.C. § 605. Plaintiff respectfully requests that this Court use its statutory discretion to award Plaintiff the damages requested herein.

Dated: July __17__, 2019

LAW OFFICES OF M.L. ZAGER, P.C.
By: Joseph P. Loughlin
*Attorneys for Plaintiff*
461 Broadway, PO Box 948
Monticello, New York 12701
E-mail: Jloughlin@mzager.com
Tel: 845-794-3660
Fax: 845-794-3919

## CERTIFICATE OF SERVICE

I hereby certify that on July __17__, 2019, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Southern District's Local Rules, and this Court's requirement of certified mail service upon the following parties and participants:

Francisco Mendez
301 W 130th Street #LB New York NY 10027

Mendez Boxing Fifth Ave., Inc.
23 E 26th Street, New York NY 10010

Dated: July __17__, 2019

JAMYLAA MARTINEZ