UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

J & J Sports Productions, Inc.,

                Plaintiff,

        - against -

Francisco Mendez, individually and d/b/a
Mendez Boxing; and Mendez Boxing Fifth Ave., Inc.,
an unknown business entity d/b/a Mendez Boxing

                Defendant(s).

--------------------------------------------------------------X

DECLARATION OF PLAINTIFF'S
COUNSEL IN SUPPORT OF
APPLICATION FOR DEFAULT
JUDGMENT BY THE COURT

Case No.: 1:19-cv-03907-JPO

Joseph P. Loughlin, declare as follows:

1. My firm and I are counsel to J & J Sports Productions, Inc., in the above-entitled action, I am duly licensed to practice law in the State of New York. I have been admitted to the Southern District of New York for this case.

2. I make this Declaration in Support of Plaintiff's Application for Default Judgment by the Court.

3. Francisco Mendez, individually and doing business as Mendez Boxing and Mendez Boxing Fifth Ave., Inc., an unknown business entity d/b/a Mendez Boxing (hereinafter "Defendant(s)"), have not appeared in this action and have not responded to the Complaint served upon them within the time permitted by law.

4. Defendant(s) are not an infant, incompetent person, or person in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.

5. On July 8, 2019, a Request for Certificates of Default was filed with the Court regarding Defendant(s). (Dkt. Nos. 13 & 14).

6. Default was entered against Defendant(s) on July 8, 2019 (Dkt. Nos. 16 & 17.).

7. This action involves claims for damages by Plaintiff J & J Sports Productions, Inc. against Defendant(s) for misappropriation of the *Saul Alvarez v Amir Khan WBC Championship Fight Program*, telecast nationwide on Saturday, May 7, 2016 (hereinafter the "Program") in violation of Title 47 U.S.C. Section 605, et seq., and Title 47 U.S.C. Section 553, et seq. Plaintiff seeks relief on its causes of action under 47 U.S.C. § 605 as set forth below.

8. Plaintiff respectfully requests judgment in its favor and that damages be awarded to it for the violations of 47 U.S.C. § 605(e)(3)(C)(i)(11) and (e)(3)(C)(ii) in the amounts of $6,600.00 and $19,800.00, respectively, plus pre- and post judgment interest at the federal statutory rate.

9. Plaintiff addresses the bases for its damages request in the accompanying Memorandum. As detailed therein, damages herein may be reasonably calculated based on the available documentary evidence. See *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997).

10. No part of the judgment sought has been paid.

11. Plaintiff also requests that it be permitted 14 days to submit its request for full costs, including reasonable attorneys' fees, as permitted under 47 U.S.C. § 605, et seq.

12. Attached hereto as Exhibit 1 is a true and correct copy of the Clerk's Certificate of Default.

13. Attached hereto as Exhibit 2 is a true and correct copy of Plaintiff's Complaint.

14. Attached hereto as Exhibit 3 is a proposed form of default judgment.

15. Attached hereto as Exhibit 4 is the Return of Service for Defendant(s), indicating service on Defendant(s) on May 21, 2019 & May 14, 2019. Service was made respectively at Defendant's actual place of residence on a person of suitable age and discretion, and was subsequently mailed to Defendant(s) as required by CPLR 308(2) and was made on the corporate defendant through the

New York State Department of State.

     16. Attached hereto as Exhibit 5 is a true and correct copy of the Affidavit of Jesse Divers, who observed the unlawful broadcast of Plaintiffs Program at Mendez Boxing on Saturday, May 7, 2016.

     I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

     Executed this __17__ day of ___July___, 2019 at Monticello, New York

Joseph P. Loughlin

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

J & J Sports Productions, Inc.,

                              Plaintiff,          Index # 1:19-cv-03907-JPO

        -against-                                 CLERK'S CERTIFICATE OF DEFAULT

Francisco Mendez, et al

                              Defendants.
-------------------------------------------------------X

        I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern

District of New York, do hereby certify that this action was commenced on May 1, 2019 with

the filing of a summons and complaint, a copy of the summons and complaint was served on

defendant Francisco Mendez, individually and d/b/a Mendez Boxing by serving a person of

suitable age and discretion *Teresa Mendez (Wife)* and proof of service was therefore filed on June 6, 2019, Doc. #[8].

I further certify that the docket entries indicate that the defendant has not filed an answer or

otherwise moved with respect to the complaint herein. The default of the defendant is hereby

noted.


Dated: New York, New York
        July 8                , 2019

                                        RUBY J. KRAJICK
                                        Clerk of Court

                                By:
                                        Deputy Clerk


SDNY Web 3/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
 J & J Sports Productions, Inc.,

                                    Plaintiff,

              -against-

Francisco Mendez, et al
                                    Defendants.
--------------------------------------------------------------X

Index #   1:19-cv-03907-JPO

CLERK'S CERTIFICATE OF DEFAULT

    I, RUBY J. KRAJICK, Clerk of the United States District Court for the Southern

District of New York, do hereby certify that this action was commenced on May 1, 2019 with

the filing of a summons and complaint, a copy of the summons and complaint was served on

defendant Mendez Boxing Fifth Ave., Inc., an unknown business entity d/b/a Mendez Boxing
Money Dougherty, Registered Agent
by serving The New York State Secretary of State and proof of service was therefore filed on

June 3, 2019, Doc. #[7]. I further certify that the docket entries indicate that the defendant has

not filed an answer or otherwise moved with respect to the complaint herein. The default of

the defendant is hereby noted.

Dated: New York, New York
       July 8      , 2019

                                            RUBY J. KRAJICK
                                            Clerk of Court

                            By: _____
                                  Deputy Clerk

# Exhibit 2

Joseph P. Loughlin
Law Offices of M.L. Zager, P.C.
461 Broadway, PO Box 948
Monticello NY 12701
jloughlin@mzager.com
Fax: 845-794-3919
Tel: 845-794-3660

Attorneys for Plaintiff
J & J Sports Productions, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J & J Sports Productions, Inc. | Case No.: |
| Plaintiff, | |
| vs. | COMPLAINT |
| Francisco Mendez, individually and d/b/a Mendez Boxing; and Mendez Boxing Fifth Ave., Inc., an unknown business entity d/b/a Mendez Boxing | |
| Defendants. | |

**PLAINTIFF ALLEGES:**

## <u>JURISDICTION</u>

    1. Jurisdiction is founded on the existence of a question arising under particular statutes. This action is brought pursuant to several federal statutes, including the Communications Act of 1934, as amended, Title 47 U.S.C. 605, *et seq.*, and The Cable & Television Consumer Protection and Competition Act of 1992, as amended, Title 47 U.S. Section 553, *et seq.*

    2. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. Section 1331, which states that the District Courts shall have original jurisdiction of all civil actions

arising under the Constitution, laws, or treaties, of the United States.

3. This Court has personal jurisdiction over the parties in this action as a result of the Defendants' wrongful acts hereinafter complained of which violated the Plaintiff's rights as the exclusive commercial domestic distributor of the televised fight *Program* hereinafter set forth at length. The Defendants' wrongful acts consisted of the interception, reception, publication, divulgence, display, and exhibition of said property of Plaintiff within the control of the Plaintiff in the State of New York.

## VENUE AND INTRADISTRICT ASSIGNMENT

4. Venue in this Court is proper under 28 U.S.C. §1391 as a substantial part of the Programs or omissions giving rise to the claims herein  occurred in this District.

5. Assignment to the Southern District of New York is proper because a substantial part of the Programs or omissions giving rise to the claim occurred in New York County and/or the United States District Court for the Southern District of New York has decided that suits of this nature, and each of them, are to be heard by the Courts in this particular Division.

## THE PARTIES

6. Plaintiff, J & J Sports Productions, Inc. is, and at all relevant times hereto was, a California corporation with its principal place of business located at 950 South Bascom Avenue, Suite 3010, San Jose, California 95128.

7. Mendez Boxing Fifth Ave., Inc., an unknown business entity d/b/a Mendez Boxing (hereinafter "Mendez Boxing Fifth Ave., Inc."), at all times relevant hereto, was a Domestic Business Corporation organized and existing under the laws of the State of New York.

8. At all times relevant hereto, Mendez Boxing Fifth Ave., Inc. was an owner, and/or

operator, and/or licensee, and/or permittee, and/or person in charge, and/or an entity with dominion, control, oversight and management of the commercial establishment doing business as Mendez Boxing operating at 23 E 26th Street, New York NY 10010.

9. At all times relevant hereto, Defendant Francisco Mendez was identified as Chief Executive Officer and Principal of Mendez Boxing Fifth Ave., Inc., which owned and operated the commercial establishment doing business as Mendez Boxing operating at 23 E 26th Street, New York NY 10010.

10. Plaintiff is informed and believes, and alleges thereon that on Saturday, May 7, 2016 (the night of the *Program* at issue herein, as more specifically defined in Paragraph 17) Defendant, Francisco Mendez, as the Chief Executive Officer and Principal of Mendez Boxing Fifth Ave., Inc., had the right and ability to supervise the activities of Mendez Boxing, which included the unlawful interception, receipt and publication of Plaintiff's *Program*.

11. Plaintiff is informed and believes, and alleges thereon that on Saturday, May 7, 2016 (the night of the *Program* at issue herein, as more specifically defined in Paragraph 17) Francisco Mendez as the Chief Executive Officer and Principal of Mendez Boxing Fifth Ave., Inc. had the obligation to supervise the activities of Mendez Boxing operating at 23 E 26th Street, New York NY 10010, which included the unlawful interception, receipt and publication of Plaintiff's *Program*.

12. Plaintiff is informed and believes, and alleges thereon that on Saturday, May 7, 2016 (the night of the *Program* at issue herein, as more specifically defined in Paragraph 17), Defendant Francisco Mendez specifically directed the employees of Mendez Boxing to unlawfully intercept, receive and broadcast Plaintiff's *Program* at Mendez Boxing or intentionally intercepted, and/or published the *Program* at Mendez Boxing himself. The actions of the employees of Mendez Boxing

Page 3

are imputable to Defendant Francisco Mendez by virtue of his acknowledged responsibility for the operation of Mendez Boxing.

13. Plaintiff is informed and believes, and alleges thereon that on Saturday, May 7, 2016 (the night of the *Program* at issue herein, as more specifically defined in Paragraph 17), Defendant Francisco Mendez as the Chief Executive Officer and Principal of Mendez Boxing Fifth Ave., Inc. had an obvious and direct financial interest in the activities of Mendez Boxing operating at 23 E 26th Street, New York NY 10010, which included the unlawful interception, receipt and publication of Plaintiff's *Program*.

14. Plaintiff is informed and believes, and alleges thereon that the unlawful interception, receipt and publication of Plaintiff's *Program*, as supervised and/or authorized by Defendant Francisco Mendez, resulted in increased profits or financial benefit to Mendez Boxing.

15. Plaintiff is informed and believes, and alleges thereon that on May 7, 2016   (the night of the *Program* at issue herein, as more specifically defined in Paragraph 17),  Defendant, Francisco Mendez as the Chief Executive Officer and Principal of Mendez Boxing Fifth Ave., Inc. was a moving and active conscious force behind the operation, advertising and promotion of Mendez Boxing operating at 23 E 26th Street, New York NY 10010, and is responsible for all activities that occurred therein, which included the unlawful interception and exhibition of Plaintiff's *Program*.

### Factual Background

16. Plaintiff J & J Sports Productions, Inc., hereby incorporates by reference all of the allegations contained in paragraphs 1-15, inclusive, as though set forth herein at length.

17. Plaintiff entered into a license agreement with Golden Boy Promotions, LLC through which Plaintiff was granted the exclusive nationwide commercial distribution (closed-circuit) rights

to Saul Alvarez v Amir Khan, WBC World Middleweight Championship Fight *Program*, telecast nationwide on Saturday, May 7, 2016, including undercard or preliminary bouts (the match and all related bouts are collectively referred to as the "*Program*"), at commercial establishments such as theaters, arenas, bars, clubs, lounges, restaurants and the like throughout New York and other geographic locales (the "License Agreement"). A copy of the License Agreement is annexed hereto as **Exhibit A**. Plaintiff paid substantial fees for its exclusive rights to exhibit the Program under the License Agreement.

18. Pursuant to the terms of the License Agreement, Plaintiff J & J Sports Productions, Inc., entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of New York, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit the Program within their respective commercial establishments.

19. The Program could only be exhibited in a commercial establishment in New York if said establishment was contractually authorized to do so by Plaintiff J & J Sports Productions, Inc.

20. Pursuant to the License Agreement, J & J Sports Productions, Inc. marketed and distributed the closed-circuit rights granted to it. J & J Sports Productions, Inc. contracted with various establishments throughout New York and granted to such establishments the right to broadcast the Program in exchange for a fee.

21. As a commercial distributor and licensor of sporting Programs, including the *Program*, Plaintiff J & J Sports Productions, Inc., expended substantial monies marketing, advertising, promoting, administering, and transmitting the *Program* to its commercial customers.

22. The transmission of the *Program* was electronically coded or "scrambled". In order for

Page 5

the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment. The *Program* originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal.

23. If a commercial establishment was authorized by Plaintiff to receive the *Program*, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's satellite or cable provider would be notified to unscramble the reception of the *Program* for the establishment, depending upon the establishment's equipment and provider.

24. On May 7, 2016 (the night of the Program at issue herein, as more specifically defined in Paragraph 17), Mendez Boxing broadcast the Program on one (1) television screen.

25. On information and belief, on May 7, 2016 (the night of the Program at issue herein, as more specifically defined in Paragraph 17), Mendez Boxing sold  non-alcoholic beverages to its patrons

26. The commercial fee for an establishment the size of Mendez Boxing to broadcast the Program lawfully was $2,200.00. Neither Defendant Francisco Mendez nor Mendez Boxing Fifth Ave., Inc. paid such a fee to Plaintiff.

<u>**COUNT I**</u>

**(Violation of Title 47 U.S.C. Section 605)**

27. Plaintiff J & J Sports Productions, Inc., hereby incorporates by reference all of the allegations contained in paragraphs 1-26, inclusive, as though set forth herein at length.

28. On May 7, 2016 in violation of J & J Sports Productions, Inc.'s rights and federal  law, Defendant intercepted and/or received the satellite communication of the Program at Mendez

Boxing. Defendant also divulged and published said communication, or assisted in divulging and publishing said communication to patrons within Mendez Boxing.

29. The *Program* was broadcast at Mendez Boxing without the authorization or approval of Plaintiff.

30. With full knowledge that the *Program* was not to be intercepted, received, published, and/or exhibited by commercial entities unauthorized to do so, the above named Defendant, either through direct action or through actions of employees or agents directly imputable to Defendant (as outlined in paragraphs 7-15 above), did unlawfully intercept, receive, publish, and/or exhibit the *Program* at the time of its transmission at her commercial establishment Mendez Boxing, operating at 23 E 26th Street, New York NY 10010.

31. Said unauthorized interception, reception, publication, and/or exhibition by the Defendant was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain, as confirmed by, *inter alia*, the broadcasting of the *Program* on one television screen, and the sale of non-alcoholic beverages during the broadcast.

32. Title 47 U.S.C. § 605(a), and in particular the second through fourth sentences thereof, prohibits the unauthorized interception, receipt, publication and use of radio communications (which include satellite signals) such as the transmission of the Program for which Plaintiff J & J Sports Productions, Inc., had the distribution rights thereto.

33. By reason of the aforesaid mentioned conduct, the aforementioned Defendant, violated Title 47 U.S.C. § 605(a).

34. By reason of the Defendant's violation of Title 47 U.S.C. § 605(a), Plaintiff J & J Sports Production, Inc., has the private right of action pursuant to Title 47 U.S.C. § 605.

35. As the result of the aforementioned Defendant's violation of Title 47 U.S.C. § 605(a), and pursuant to said Section 605, Plaintiff J & Jr Sports Productions, Inc., is entitled to the following from Defendant:

(a) Statutory damages for each violation of in an amount to $10,000 pursuant to Title 47 U.S.C. Section 605(e)(3)(C)(i)(II);

(b) Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. § 605(e)(3)(C)(ii); and

(c) The recovery of full costs, including reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

**WHEREFORE, Plaintiff prays for judgment as set forth below.**

## COUNT II

### (Violation of Title 47 U.S.C. Section 553)

36. Plaintiff J & J Sports Productions, Inc. hereby incorporates by reference all of the allegations contained in paragraphs 1-37, inclusive, as though set forth herein at length.

37. Title 47 U.S.C. § 553(a) prohibits the unauthorized interception or receipt of programming such as Plaintiff's over a cable system.

38. Upon information and belief, and as an alternative to Count I, on May 7, 2016 in violation of J & J Sports Productions, Inc.'s rights and federal law, Defendant willfully intercepted and/or received the original communication of the *Program* at Mendez Boxing via a cable system.

39. Said unauthorized interception and reception by the Defendant was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain, as confirmed by, inter alia, the broadcasting of the *Program* on one (1) televisions screens, and the sale

of non-alcoholic beverages during the broadcast.

40. The unauthorized interception or reception of the Program by the Defendant was prohibited by Title 47 U.S.C. § 553(a).

41. By reason of the aforesaid mentioned conduct, the Defendant violated Title 47 U.S.C. § 553(a).

42. By reason of the Defendant's violation of Title 47 U.S.C. § 553(a), Plaintiff J & J Sports Productions, Inc., has the private right of action pursuant to Title 47 U.S.C. § 553.

43. As the result of Defendant's violation of Title 47 U.S.C. § 553(a), Plaintiff J & J Sports Productions, Inc., is entitled to the following from Defendant:

(a) Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii);

(b) Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(B);

(c) The recovery of full costs pursuant to Title 47 U.S.C. Section 553 (c)(2)(C); and

(d) In the discretion of this Honorable Court, reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 553 (c)(2)(C).

**WHEREFORE, Plaintiff prays for judgment as set forth below.**

**As to the First Count:**

1. For statutory damages in the amount of $110,000.00 against the Defendant;

2. For reasonable attorneys' fees as mandated by statute;

3. For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

4. For such other and further relief as this Honorable Court may deem just and proper.

**As to the Second Count:**

1. For statutory damages in the amount of $60,000.00 against the Defendant;

2. For reasonable attorneys' fees as may be awarded in the Court's discretion pursuant to statute;

3. For all costs of suit, including, but not limited to, filing fees, service of process fees, investigative costs; and

4. For such other and further relief as this Honorable Court may deem just and proper.

Date:   May 1, 2019

Respectfully submitted,

LAW OFFICES OF M.L. ZAGER, P.C.
By: Joseph P. Loughlin
Attorneys for Plaintiff
J & J Sports Productions, Inc.

# EXHIBIT A

Case 1:19-cv-03907-JPO   Document 21   Filed 07/17/19   Page 19 of 37
Case 1:19-cv-03907-JPO   Document 1   Filed 05/01/19   Page 12 of 20
07/19/2016   15:10    14085403498              JJ SPORTS PROD                        PAGE   02/09

## GOLDEN BOY PROMOTIONS, LLC
626 Wilshire Blvd., Suite 350
Los Angeles, California 90017

March 31, 2016

**VIA EMAIL**
J & J Sports Productions, Inc.
2380 South Bascom Avenue, Ste. 200
Campbell, CA 95008

Attention: J.M. Gagliardi

RE:    CLOSED CIRCUIT TELEVISION LICENSE AGREEMENT

Saul "Canelo" Alvarez v. Amir Khan
Scheduled 12 round Middleweight Championship Bout
Plus selected undercard bouts
(Fighters subject to change)

T-Mobile Arena
Las Vegas, Nevada
Saturday, May 7, 2016

Gentlemen:

This will confirm the terms of our agreement whereby GOLDEN BOY PROMOTIONS LLC ("**Promoter**") hereby grants to J&J Sports Productions ("**J&J**" "**you**" or "**Licensee**") the exclusive license to exhibit Promoter's live **English language** telecast (the "Telecast") of the captioned Bout and accompanying undercard matches (the "**Event**"), simultaneously with the Event, only within the fifty states of the United States of America (with the exception of Clark County Nevada, which shall be "blacked out" unless Licensee receives written authorization by Promoter to exhibit the Event within Clark County) and **Canada** (the "**Territory**"), only at commercial closed circuit television exhibition outlets, such as bars, clubs, lounges, restaurants and the like, each with a fire code occupancy capacity **not to exceed**        persons per outlet (except for outlets within casinos where the seating capacity may exceed        persons per outlet), located within the Territory. The Exhibition rights granted herein **do not include** any rights to exhibit the Telecast in the Commonwealth of Puerto Rico, Mexico, transmissions to hotel guest rooms, in-flight aircraft or other transportation facilities, nor does it include the right to exhibit the Event in any language other than English (which is expressly reserved by Promoter). Any proposed closed circuit exhibition of the Event at arenas, racetracks or theaters (if Promoter does not execute the

1

07/19/2016   15:10   14085403498          JJ SPORTS PROD                      PAGE   03/09

Fathom Agreement as defined below) shall be subject to the prior written approval of Promoter, which approval may be granted or refused in the discretion of Promoter.

1.    <u>License Fee.</u> As full and complete compensation for the rights granted to Licensee by Promoter, you shall pay to Promoter the license fee calculated as follows:

a.    Licensee shall pay the Minimum Financial Guarantee of . (the "**Minimum Financial Guarantee**"), pursuant to the provisions of paragraph 2;

Then, the amount of all gross revenues in excess of the first . (which threshold amount Licensee shall retain in recoupment of the Minimum Financial Guarantee) which Licensee receives from all closed circuit television exhibitions of the Event in the Territory shall be payable as follows:

i.    to Licensee;

ii.   Deduct Marketing and credit card costs up t                                        of revenue;

iii.  Deduct Sales commission up                                   ;

iv.   The remaining revenue balance shall be . to Licensee

b.    For avoidance of doubt, if Promoter executes the Fathom Agreement (as defined below), then Licensee shall not license any theaters in the Territory and License Fees shall expressly exclude any and all revenues and monies derived from or relating to the sale, license or other exploitation of the rights granted to Fathom pursuant to the Fathom Agreement.

c.    All amounts which are to be deducted or withheld by your sublicense exhibitors, sales agents or distributors from payments to you or your sublicensees shall be subject to the mutual agreement of Promoter and Licensee but shall not ex of gross revenues (excluding authorization fees) from each outlet from exhibition of the Event.

d.    In the event that you should sublicense an outlet for a fixed lump sum or for a license fee which includes a guaranteed amount which is not exceeded by your share of revenues from that outlet, you shall include in gross revenue hereunder the amount equal to such lump sum or guarantee.

e.    You shall provide the services of a duly authorized representative of your organization who shall be present at each licensed and sublicensed outlet immediately prior to

2

and during the telecast of the Event, to monitor compliance with the terms of this Agreement
and report on attendance figures and the collection of admission fees.

      f.      You shall be entitled to deduct and withhold, for advertising and publicity
purposes, up to :..                          of gross revenues from exhibition locations which you license
directly to operators, other than Licensee or its affiliates, without any commission or distribution
fee to third party sales agents or distributors.

      g.      Licensee shall be responsible for all of its local advertising materials, such
as posters, press kits and slides, including the option to use Event posters to be supplied by HBO-
PPV. All advertising materials shall be subject to Promoter's prior written approval.

      h.      The calculation of gross revenues shall not include the amount of any fees
or taxes referenced in this Agreement paid or required to be paid hereunder.

      i.      Licensee acknowledges that Promoter intends to enter into an agreement
with Fathom for the sale, license or other exploitation of the rights of the Event and its exhibition
in movie theaters.

      j.      Licensee agrees to authorize the exhibition of the Event in Las Vegas casino
at the sole direction of Promoter.  For avoidance of doubt, License Fees shall expressly exclude
any and all revenues and monies derived from or relating to the sale or license of the exhibition
of the Event at casino locations in Las Vegas.

    2.     <u>Minimum Financial Guarantee and License Fee Overage Payments.</u>

      a.      As minimum guarantee and non-refundable advance against the License
Fee due to Promoter pursuant to Paragraph 1 of this Agreement for the
Event, you shall pay to Promoter the sum of
                                          , ,, .. ...., not later than ten
.  business days prior to the Event; and

      b.      The Minimum Financial Guarantee amount shall be paid by:

          i.      a certified check or bank cashier's check payable to "Golden Boy
Promotions, LLC" in such amount; or

          ii.      bank wire delivered to:

                  Name of Bank
                  Bank Street Address
                  City, State, Zip Code
                  Attn.:
                  Bank Routing Number

Case 1:19-cv-03907-JPO   Document 21   Filed 07/17/19   Page 22 of 37
Case 1:19-cv-03907-JPO   Document 1   Filed 05/01/19   Page 15 of 20
07/19/2016  15:10    14085403498         JJ SPORTS PROD                    PAGE  05/09

Account No.
(to be provided by Promoter)

   c.    Payment of all license fee amounts in excess of the applicable Minimum Financial Guarantee for the Event shall be due and payable to Promoter not later than te      business days after the Event.

   3.    <u>Compatible Decoding Equipment</u>. You and your sublicensees shall be responsible to obtain, at your or their cost and expenses, either:

   a.    Authorization to receive the Event through the services of one or more direct satellite suppliers ("DSS"), such as DirecTV or DISH Network, to be selected by you and approved by Promoter in writing in advance; or

   b.    If Promoter licenses VUBIQUITY (formerly ABAIL-TVN) to distribute the Event by C-Ban and so notified Licensee, authorization to receive the Event through VUBIQUITY.

   c.    DSS and VUBIQUITY, if applicable, shall be responsible for the encoding and decoding of their retransmitted signals.

   d.    You shall not charge decoder rental or authorization fees to your sublicensees in excess of      per decoder or authorization. Any additional equipment charges to your sublicensees shall be at your cost.

   4.    <u>Addressing of Decoders</u>

   a.    Promoter shall deliver either, as Promoter shall elect in its discretion, (i) the encrypted transmission of the video and audio signal of its telecast of the Event to a domestic satellite or other delivery point from which the signal is capable of being received by DSS and VUBIQUITY, for redistribution to your designated outlets or (ii) by fiber optic cable to a delivery point at which the signal is capable of being received by DSS and VUBIQUITY, for redistribution to your designated outlets. Such delivery to the delivery point shall constitute full and complete discharge of the obligations of Promoter to you hereunder. DSS and VUBIQUITY, if applicable, as the case may be, shall have the responsibility to address and authorize decoders for your authorized sublicensees. You shall be responsible for all charges for addressing and authorizing your sublicensees, as well as all costs and expenses necessary for the reception of the signal and for the projection at the outlets.

   b.    Promoter shall have no responsibility for your decoder authorization fees, and Promoter shall have no responsibility or liability to you or your sublicensees for any technical failures which may occur in connection with the authorizing of decoders for your sublicensed closed circuit exhibition outlets or in connection with any retransmission or authorizing by DSS or VUBIQUITY, and in such case, you remain responsible for payment of the License Fee to Promoter

4

07/19/2016  15:10   14085403498           JJ SPORTS PROD                    PAGE  06/09

c.      You shall instruct DSS and VUBIQUITY, if applicable, to provide directly to
Promoter, on the first business day after the Event, their complete final sublicense reports which
shall indicate the name, address and city of each sublicensed outlet and the decoder number for
each sublicensed outlet.

5.      Pay-Per-View Exhibitions, Delayed Pay Cable Telecasts and Online Internet
Transmissions.

You acknowledge the Promoter will be licensing the live and delayed cable television,
direct broadcast satellite television and digital online internet transmissions and exhibitions of
the Event in the Territory on a residential pay-per-view basis, with subsequent pay cable delayed
telecasts, and that you shall have no interest or participation in such exhibitions or any other
exploitation of the Event.  Accordingly, Licensee has no right to record, duplicate or copy the
Event by any means or to exhibit, reproduce or retransmit the Event or any portion thereof.  The
Telecast shall be exhibited in its entirety without alterations or changes of any nature,
simultaneous with the Program.

6.      Anti-Piracy.

You and your sublicensees shall use their reasonable best efforts to employ adequate
security systems and other measures to prevent theft, pirating, copying, duplication or
unauthorized exhibition or transmission of the Event. You and your sublicensees shall promptly
advise Promoter of any piracy (i.e., unauthorized use or proposed use) of the telecast in the
Territory. Promoter and Licensee, acting jointly, shall have the right to commence or settle any
claim or litigation arising out of the alleged piracy, use or proposed use of the telecast in the
Territory.  Promoter and Licensee shall notify each other in writing and shall consult with each
other and mutually agree before commencing or settling any such claim or litigation in the
Territory.   Any damages, whether statutory, compensatory, punitive or otherwise, which
Promoter or Licensee may recover from the theft, piracy, copying, duplication, unauthorized
exhibition or transmission of the Event in the Territory, after payment of reasonable legal fees
and disbursements, shall constitute gross revenues from the Event, to be shared by, and
distributed to, Promoter and Licensee as provided in Paragraph 1 of this Agreement. Licensee
shall advance all required legal fees and disbursements, subject to recoupment from any
application recovery, and shall report all expenses, settlements and recoveries to Promoter on a
quarterly basis.  Your sublicensees shall have no right to commence or settle any claim or
litigation arising out of the alleged piracy of the telecast hereunder without the prior written
consent of Promoter.

7.      Private Showings. Promoter shall have the right, at its cost and expense and upon
written notice to you, to conduct or authorize others to conduct up to           complimentary
private showings of the telecast of the Event within the Territory, with no admission charge and
no advertising or advance publicity for such private showings.

5

Case 1:19-cv-03907-JPO  Document 21  Filed 07/17/19  Page 24 of 37
Case 1:19-cv-03907-JPO  Document 1  Filed 05/01/19  Page 17 of 20
07/19/2016  15:10    14085403498              JJ SPORTS PROD                    PAGE  07/09

8.    Attachments.  Annexed to this Agreement as exhibits are the following documents, the terms and conditions of which are incorporated herein as if set forth in their entirety:

a.    Closed Circuit Television Sublicense Agreement which you and your sublicensee shall complete and sign with respect to each closed circuit television outlet you may sublicense.  YOU SHALL NOT ENTER INTO ANY SUCH AGREEMENT WITHOUT FIRST OBTAINING, PRIOR TO THE TELECAST OF THE EVENT, THE WRITTEN CONSENT AND APPROVAL OF PROMOTER TO THE TERMS THEREOF AND WITHOUT OBTAINING THE COUNTER-SIGNATURE OF PROMOTER ON THE SUBLICENSE AGREEMENT.

b.    Closed Circuit Television Standard Terms and Conditions which shall apply to this Agreement as well as to the Closed Circuit Television Sublicense Agreement.  YOU SHALL ATTACH A COPY OF THE STANDARD TERMS AND CONDITIONS TO EACH SUCH SUBLICENSE AGREEMENT.

9.    Defaults.

a.    Your failure to deliver the Minimum Financial Guarantee as provided in Paragraph 2 hereof or to pay the license fee as provided in Paragraph 1 hereof or to pay the signal delivery fees or equipment expenses as provided in Paragraph 3 hereof or to comply with any other material term or condition of this Agreement or of the annexed agreements or the Standard Terms and Conditions shall permit Promoter, in addition to all of its other rights and remedies, to cancel this Agreement with you at any time without any further liability or obligation to you and to retain all monies paid to Promoter prior to such cancellation.  Provided, however, that before Promoter may exercise any remedy with respect to any such default, Promoter must (i) provide Licensee with written notice specifying such default and (ii) if and to the extent that time reasonably permits prior to the event, provide Licensee with up to seven (7) days after Licensee's receipt of such default notice within which to cure such default.

b.    If, in violation of the provisions of this Agreement, you or a sublicensee exhibits the Event in an outlet with a fire code occupancy limit in excess of        persons (except casino locations), then, in addition to the license fee for such outlet as provided in Paragraph 1, and in addition to and not in limitation of or in lieu of any other rights or remedies Promoter may have under this Agreement, at law or in equity, including, without limitation, Promoter's rights to indemnification hereunder, Licensee shall immediately pay to Promoter an amount equal to the following for each such outlet that violates the aforesaid restriction: the sum of the fire code occupancy capacity of the outlet multiplied by        of the face amount of the highest ticket or admission price for the Event at that outlet.  You agree that this payment is reasonably calculated to reimburse Promoter for its damages in the event of such violation of this Agreement.

6

Case 1:19-cv-03907-JPO   Document 21   Filed 07/17/19   Page 25 of 37
Case 1:19-cv-03907-JPO   Document 1   Filed 05/01/19   Page 18 of 20
07/19/2016   15:10     14085403498         JJ SPORTS PROD               PAGE   08/09

10.   No Packaging with Other Events.

You shall not sublicense closed circuit television rights to the Event to exhibitors as part of a package which includes other boxing programs or bouts not included in this Event without the prior written consent of Promoter.

11.   Reports, Collection and Accounting.

a.     You shall be responsible for collection of all monies from outlets, and shall make all payments and provide all reports pursuant to Paragraph 4 of the Closed Circuit Television Standard Terms and Conditions and shall provide Promoter with copies of all reports received from sublicensed outlets.   You shall distribute to Promoter all amounts due for exhibition rights to the Event, with no deductions, set-offs or holdbacks whatsoever.

b.     In addition to the reports required in the Closed Circuit Television Standard Terms and Conditions, you shall provide Promoter with:

Separate reports no later than 72 hours, 48 hours, and 24 hours before the Event and one week following the Event, including the name, locations and license fee for each closed circuit exhibition outlet and including method of signal delivery to each outlet and the information required in Paragraph 10(d) of the Closed Circuit Television Standard Terms and Conditions.

Promoter's representatives shall have the right to visit your offices and each outlet at any time during normal business hours prior to the Event and after the Event to obtain and verify such information, in person or electronically, and to make arrangements for the payment of all license fees due to Promoter promptly following the Event.

All contracts and reports shall be sent to:

Golden Boy Promotions, LLC
626 Wilshire Blvd. Suite 350
Los Angeles, CA 90017

12.   Confidentiality.  Neither party shall disclose to any third party (other than its employees and agents, in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event the party seeking disclosure shall so notify the other   party as promptly as practicable (if possible, prior to making such a disclosure), (ii) as part of normal reporting or review procedure to its banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this paragraph, and (iii) in order to enforce its rights pursuant to this Agreement.

Case 1:19-cv-03907-JPO   Document 21   Filed 07/17/19   Page 26 of 37
Case 1:19-cv-03907-JPO   Document 1   Filed 05/01/19   Page 19 of 20
07/19/2016  15:10   14085403498              JJ SPORTS PROD                    PAGE  09/09

13. <u>Entire Agreement.</u> This Agreement supersedes and terminates all prior agreements between the parties hereto and their affiliates with respect to the subject matter contained herein, and this Agreement embodies the entire understanding between the parties relating to such subject matter, and any and all prior correspondence, conversations and memoranda are merged herein and shall be without effect hereon. It may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto. The laws of the State of Nevada applicable to contracts executed and to be fully performed in the State of Nevada shall govern this agreement, and execution of the agreement shall constitute the consent of Licensee and any sublicensee to exclusive jurisdiction of Nevada. Any dispute, controversy or claim arising out of or relating to this Agreement, including the formation, interpretation, breach or termination thereof, including whether the claims asserted are arbitrable, will be referred to and finally determined by arbitration in accordance with the JAMS Commercial Arbitration Rules before a single arbitrator who shall be selected by the parties to the arbitration and who shall be a retired judge or justice. If the parties are unable to select an arbitrator, the arbitrator will be selected in accordance with the JAMS Rules. The place of arbitration will be Las Vegas, Nevada. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The prevailing Party in arbitration shall be entitled to its reasonable costs, including the costs of arbitration, and attorneys' fees.

Very truly yours,
GOLDEN BOY PROMOTIONS, LLC

By: _____ 4/4/16
    Authorized Signature

Please confirm your agreement with the above by signing and returning the attached copy of this letter. This Television License Agreement shall not become effective unless and until Promoter has accepted and signed this Agreement and returned one copy to you.

ACCEPTED AND AGREED:

J&J Sports Productions, Inc.

By: _____

BY SIGNING THIS AGREEMENT, LICENSEE ACKNOWLEDGES HAVING READ THE CLOSED CIRCUIT TELEVISION STANDARD TERMS AND CONDITIONS AND CONFIRMS ITS AGREEMENT THERETO. NO CHANGES ARE AUTHORIZED IN THE CLOSED CIRCUIT TELEVISION STANDARD TERMS AND CONDITIONS.

8

Mar. 8. 2017  3:30PM    G&G CLOSED CIRCUIT EVENTS                    No. 0297   P. 2

 **CALL TO ORDER: 1-888-258-7115**

CLOSED CIRCUIT EVENTS LLC.
www.ggsportstv.com

## Saturday, May 7th, 2016 9pmET/6pmPT

### From T-Mobile Arena, Las Vegas, Nevada
### WBC World Middleweight Title

## Saul "Canelo" Alvarez

## vs

## Amir Khan

| Capacity | Price |
|----------|-------|
| 1 - 100 | $2,200.00 |
| 101 - 200 | $3,200.00 |
| 201 - 300 | $4,200.00 |
| 301 - 500 | $5,200.00 |

-**DirecTV/DISH** HD And SD Activation is included.

-**Cable clients** – provider will bill Signal Fee

-**Texas locations add 0.03% State tax.**

**1-888-258-7115**

2380 South Bascom Avenue, Suite 200 • Campbell, CA 95008 • Tel: (408) 369-8022 • Fax: (408) 369-8096

# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
J & J Sports Productions, Inc.,

                       Plaintiff,

         - against -

Francisco Mendez, individually and d/b/a Mendez
Boxing; and Mendez Boxing Fifth Ave., Inc.,
an unknown business entity d/b/a Mendez Boxing

                       Defendant(s).
-------------------------------------------------------------------X

**DEFAULT JUDGMENT** (proposed)

Case No.: 1:19-cv-03907-JPO

     This action having been commenced on May 1, 2019 by the filing of the Summons and Complaint, and a copy of the Summons and Complaint having been served on the Defendant, Francisco Mendez by substituted service of the Summons and Complaint on Teresa Mendez (wife) and proof of service was therefore filed on 6/6/19 [Doc. #8]; and upon the Defendant, Mendez Boxing Fifth Ave., Inc. by serving Nancy Dougherty, Business Document Specialist of the New York State Department of State on May 14, 2019 and proof of service was therefore filed on 6/3/19 [Doc. #7] and the Defendants not having answered the Complaint, and the time for answering the Complaint having expired, it is

     ORDERED, ADJUDGED AND DECREED: That the plaintiff have judgment against defendants in the liquidated amount of $_____ with interest at _____ % from _____ plus costs and disbursements of this action in the amount of $1113.00 amounting in all to $_____.

Dated: New York, New York

     _____

                               _____
                               Honorable J. Paul Oetken
                               United States District Judge

# Exhibit 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| J & J Sports Productions, Inc., | Index Number: 1:19-cv-03907 |
| | Date Filed: 05/01/2019 |
| *vs*      *Petitioner(s)* | Client's File No.: |
| Francisco Mendez, individually and d/b/a Mendez Boxing, et. al., | Court/Return Date: |
| *Defendant(s)* | |

STATE OF NEW YORK, COUNTY OF QUEENS, SS.:

# AFFIDAVIT OF SERVICE

**Pedro J. Rodriguez (Lic. 2024701),** being sworn says:
Deponent is not a party herein is over the age of 18 years and resides in the State of New York.

On **May 21, 2019**, at **11:43 AM** at **301 W 130th Street, #LB, New York, NY 10027,** Deponent served the within **Civil Cover Sheet, Summons in a Civil Action, Complaint and Exhibit**

On: **Francisco Mendez, individually and d/b/a Mendez Boxing**, Defendant therein named, (hereinafter referred to as "subject").

☐ **#1 INDIVIDUAL**
By delivering a true copy of each to said subject personally; Deponent knew the person so served to be the person described in as said subject therein.

☒ **#2 SUITABLE AGE PERSON**
By delivering thereat a true copy of each to **Teresa Mendez (wife)** a person of suitable age and discretion. Said premises is subject's:[] actual place of business / employment [X] dwelling house / usual place of abode / last-known residence within the state.

☐ **#3 AFFIXING TO DOOR**
By affixing a true copy of each to the door of said premises which is subjects
[] actual place of business / employment [] dwelling house / usual place of abode / last-known residence within the state. I was unable with due diligence to find subject thereat, having attempted personal delivery on:

☐ **#4 AUTHORIZED AGENT**
By delivering thereat a true copy of each personally to , which person is the thereof, an agent duly authorized to accept service on behalf thereof.

☒ **#5 MAILING**
On **May 21, 2019**, service was completed by mailing a true copy of above document(s) to the above address in a first-class, postpaid, properly addressed envelope marked "Personal and Confidential" , from a depository under the exclusive care and custody of the United States Post Office in the State of New York, or, if not served in New York State, within the State in which the service occurred.

    ☐ An additional mailing was completed to the address above by certified mail. Certified mailing #

☒ **#6 APPROXIMATE DESCRIPTION**
Sex: Female    Skin/Race: Lt. Brown    Color of hair: Black    Age: 45-55
Height: 5/0-5/3    Weight: 130-160    Other Features: Glasses

☒ **#7 MILITARY SERVICE:** Upon information and belief, subject is not active in the U.S. Military Service in any capacity. No specific active military information was provided by recipient when questioned during service, and/or non-military status was confirmed through records of the U.S. Dept. Of Defense or otherwise known to and/or verified by me, and I received no indication during completion of this service that subject is active military.

☐ **#8 WITNESS FEES**
Subpoena Fee Tendered in the amount of $

☐ **#9 OTHER**

Sworn to before me on 5/27/19

_____
*NOTARY PUBLIC*
*(sign and affix stamp/seal)*

ROBERT URENA
Notary Public, State of New York
Registration No. 01UR6181882
Qualified in Queens County
Commission Expires February 11, 2020



_____
Pedro J. Rodriguez (Lic. 2024701)

*RONDOUT LEGAL SERVICES, INC., PO BOX 4115, KINGSTON, NY 12402 (TEL.: 845-331-6029)*

## AFFIDAVIT OF SERVICE

# UNITED STATES DISTRICT COURT
## Southern District of New York

Date Filed: 5/1/2019

Index Number: 1:19-CV-03907

Plaintiff:
**J & J Sports Productions, Inc.**

vs.

Defendant:
**Francisco Mendez, individually and d/b/a Mendez Boxing, et al.**

**State of New York, County of Albany}ss.:**

Received by Rondout Legal Services, Inc. to be served on **Mendez Boxing Fifth Ave. Inc., an unknown business entity d/b/a Mendez Boxing.**

I, James Boland, being duly sworn, depose and say that on the **14th day of May, 2019 at 3:00 pm, I:**

Served Mendez Boxing Fifth Ave. Inc., an unknown business entity d/b/a Mendez Boxing by delivering two true copies of the **Civil Cover Sheet, Summons in a Civil Action, Complaint and Exhibit pursuant to section 306 BCL together with statutory service fee in the amount of $40.00** to Nancy Dougherty as Business Document Specialist of the Secretary of State of the New York State Department of State, 99 Washington Avenue, Albany, NY, 12207, the Secretary of State of the New York State Department of State being the **Registered Agent** of record of the within named corporation, in compliance with state statutes.

**Description** of Person Served:  Age: 60,  Sex: F,  Race/Skin Color: White,  Height: 5'4",  Weight: 150,  Hair: Brown, Glasses: Y

I am over the age of 18 and have no interest in the above action.

**James Boland**
Process Server

Subscribed and Sworn to before me on the 23rd day
of May, 2019 by the affiant who is personally known to
me.

**NOTARY PUBLIC**

PATRICIA A. BURKE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BU4922372
Qualified in Albany County
My Commission Expires February 28, 2022

**Rondout Legal Services, Inc.**
P.O. Box 4115
Kingston, NY  12402
(845) 331-6029

Our Job Serial Number: 2019001789
Ref: 1906167

Copyright © 1992-2009 Database Services, Inc. - Process Server's Toolbox V6.3x

# Exhibit 5

STATE OF <u>NEW YORK</u>

COUNTY OF <u>NEW YORK</u>

## <u>AFFIDAVIT</u>

I hereby declare under penalty of perjury and in conformance with the provisions set forth in Title 28 U.S.C. § 1746 that

I, <u>JESSE DIVERS,</u>          being duly sworn according to law deposes and says, that on       <u>5/7/16</u> at
                                                                                              (date)

        <u>11:15 PM,</u>               I entered the                        <u>MENDEZ BOXING</u>
        (time)                                                      (trade name of establishment)

        located at                              <u>23 E 26TH ST, NEW YORK, NY 10010</u>
                                                 (street address, city, state, zip code)

I paid a cover charge of $<u>ZERO</u> to enter this establishment.  I ordered <u>SODA</u> Drink(s) from the

<u>BARTENDER</u> who was described as <u>FEMALE, HISPANIC, 23 YEARS OLD, 5'5'', 120 LBS, LONG DARK HAIR.</u>
                        (name, sex, age, ethnicity, distinguishing characteristics)

I observed <u>ONE</u> televisions located inside this establishment.  The televisions can be
        (total # of TVs)

described as follows:          <u>PROJECTION TV</u>
                               (make, model, and size of each TV)

located          <u>      IN THE GYM AREA</u>
                        (specific location of each TV)

At the time I was inside the above establishment, I observed the following program on the above televisions: <u>PAY-PER</u>
<u>VIEW EVENT: ALVAREZ (WHITE/RED TRUNKS) VS. KHAN (BLACK/MAROON TRUNKS) WITH 1:22 LEFT</u>
<u>IN THE 2ND ROUND.</u>

(names of fighters or commentators, trunk colors of each fighter/attire of commentators, time remaining in round)

I also observed the following distinguishing items inside the establishment:
<u>GYM, BOXING RING IN THE MIDDLE OF THE ROOM, MULTIPLE PUNCHING BAGS HANGING FROM THE</u>
<u>CEILING, PADDED FLOOR, BOXING MEMORABILIA ON WALLS, MIRROR ON WALLS, TREADMILLS,</u>
<u>SMALL AREA WITH CASH REGISTER SERVING SNACKS AND DRINKS</u>
                        (posters, decorations, pool tables, memorabilia, etc.)

This establishment rates          <u>GOOD.</u>
                               (Good, Fair, Poor)

The capacity of this establishment is approximately <u>100</u> people. At the time of my appearance I counted the number of patrons three (3) separate times.   The head counts were <u>40</u>, <u>40</u>, <u>40</u>.

I left the above establishment at     <u>11:26 PM</u>        <u>5/7/16</u>.
                                                (time)                    (date)

I also observed the following license plates in the parking lot: N/A

1) _____   2) _____   3) _____

Date: _____ <u>5/12/16</u> _____

_Jesse Divers_

_____
Signature of Investigator

<u>JESSE DIVERS</u>
Name of Investigator  (Printed)

<u>OMNI PRESENT INVESTIGATIONS</u>
Investigative Agency

<u>516-369-1920</u>
Telephone Number of Agency


### **NOTARY**

State of: _____ NY _____

County of: _____ NASSAU _____

On before me, _James Osgood_, personally appeared _Jesse Divers_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

      WITNESS my hand and official seal.

(SEAL)                         Signature _____

JAMES W. OSGOOD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01OS6130852
Qualified in Nassau County
My Commission Expires July · · · 7

Page 2 of 2



## **CERTIFICATE OF SERVICE**

I hereby certify that on July __17__, 2019, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Southern District's Local Rules, and this Court's requirement of certified mail service upon the following parties and participants:

> Francisco Mendez
> 301 W 130th Street #LB New York NY 10027
>
> Mendez Boxing Fifth Ave., Inc.
> 23 E 26th Street, New York NY 10010

Dated: July __17__, 2019

JAMYLAA MARTINEZ